1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              -   -   -

4    UNITED STATES OF AMERICA,   :      Criminal Action
                                 :
5              Plaintiff,        :
                                 :
6        v.                      :
                                 :
7    DAVID MATUSIEWICZ,          :
                                 :
8              Defendant.        :      No. 08-69-GMS

9                              -   -   -

10                     Wilmington, Delaware
                       September 3, 2009
11                        10:00 a.m.

12                             -   -   -

13

14   BEFORE:   HONORABLE GREGORY M. SLEET, Chief Judge

15

16   APPEARANCES:

17           CHRISTOPHER J. BURKE, ESQ.
             Assistant United States Attorney
18
                               Counsel for Government
19
             HERIBERTO MEDRANO, ESQ.
20           (Harlingen, TX)

21                             Counsel for Defendant

22

23

24

25

1          THE COURT:  Good morning.  Please be seated.

2          Mr. Burke.

3          MR. BURKE:  Good morning, Your Honor.  Your

4    Honor, Christopher Burke for the United States.

5          Your Honor, now is the time the Court has set

6    for a change of plea hearing in United States versus David

7    Matusiewicz.  It is Criminal Action 08-69-GMS in this Court.

8          Your Honor, I note for the record that the

9    defendant is present in the courtroom with his counsel, Mr.

10   Medrano.

11         Your Honor, two things to note for the Court.

12   First, I have with me an executed memorandum of plea

13   agreement signed by both Mr. Medrano and the defendant and

14   myself today.  I dated it today.  I can provide it to the

15   Court.

16         Your Honor, the other matter is there was a

17   first superseding indictment that was filed in July in this

18   court.  Mr. Medrano hasn't been retained yet.  But the

19   parties agree as part of the guilty plea process if the

20   Court could conduct the arraignment, or what the Court would

21   ask at the arraignment, that the defendant is aware of the

22   first superseding indictment and would waive reading of the

23   indictment as well.

24         THE COURT:  Thank you, Mr. Burke.

25         MR. BURKE:  Thank you, Your Honor.

1          THE COURT:  I am making a note because I don't

2    usually do arraignments around here.

3          MR. MEDRANO:  Good morning, Your Honor.

4          THE COURT:  I understand you have traveled a

5    long distance.

6          MR. MEDRANO:  For the record, my name is

7    Heriberto Medrano.  I am admitted in the Southern District

8    of Texas.  Your Honor, I do appear on behalf of Mr.

9    Matusiewicz, who is present in the courtroom.  We are ready

10   to proceed, Your Honor.

11         The representations made by the government are

12   true and correct.  Mr. Matusiewicz has to be arraigned under

13   two counts of the indictment.  We have executed the

14   memorandum of plea agreement.  We have reviewed that with

15   the government.  We have explained to him all the

16   consequences and ramifications.  We are ready to proceed,

17   Your Honor.

18         THE COURT:  Mr. Matusiewicz, you will forgive me

19   from time to time if I abuse your name, it is not

20   intentional.

21         Are you aware of this superseding indictment

22   just referenced by Mr. Medrano and Mr. Burke, the Assistant

23   United States Attorney?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Have you discussed the indictment

1    with your attorney, the superseding indictment?

2                    THE DEFENDANT:  Yes, Your Honor.

3                    THE COURT:  As well as the facts that underpin

4    the indictment?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  I understand you are prepared to

7    waive the reading of that indictment?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Counsel for the government and Mr.

10   Medrano, do you feel I need to advise Mr. Matusiewicz of

11   anything else at this point?

12                   MR. MEDRANO:  Not at this time, Your Honor.

13                   MR. BURKE:  No, Your Honor.

14                   THE COURT:  We will proceed with the colloquy.

15                   Mr. Matusiewicz, so you will know who you are in

16   front of, my name is Gregory Sleet.  I am a United States

17   Judge.  I am going to be asking you a number of questions.

18   These questions have two essential goals in mind, not

19   necessarily in any order, one being to make sure that this

20   plea, this change of plea to one of guilty that I am told

21   you are prepared to offer the Court is given by you freely

22   and voluntary.  That is, nobody has forced you to do this.

23   And secondly, just as important, you understand what you are

24   doing, that you understand the rights that you will be

25   surrendering.  That is why I will take some time to have

1    that discussion with you.

2              So if at any point during that questioning or

3    discussion with you you don't understand something I have

4    said, you don't understand a question I have asked, you have

5    a hesitancy of going forward, just ask me to pause and I

6    will give you time to consult with Mr. Medrano.

7              I am going to have you placed under oath.

8              (Defendant sworn.)

9              THE COURT:  Is it Dr. Matusiewicz?

10             THE DEFENDANT:  That is correct.

11             THE COURT:  Is that an M.D.?

12             THE DEFENDANT:  O.D.

13             THE COURT:  Same difference to me.  I wasn't

14   aware of that.  I will address you by the title you have

15   earned.

16             Sir, you have now been placed under oath.  It is

17   important, therefore, that you understand the need to answer

18   my questions truthfully.  Should you fail to do that, those

19   responses could later be used against you in another

20   prosecution for perjury or making a false statement.  Do you

21   understand this?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Doctor, do you have a middle name?

24             THE DEFENDANT:  Thomas.  Yes.

25             THE COURT:  And, sir, what is your age?

1          THE DEFENDANT:  Forty-four.

2          THE COURT:  Your date of birth?

3          THE DEFENDANT:  4/5/67.

4          THE COURT:  So you have completed the requisite

5   courses required of a D.O.?

6          THE DEFENDANT:  That's correct.

7          THE COURT:  Clearly, you read, write and

8   understand English when it is spoken?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Have you today or have you recently

11   been under the care of a medical doctor, physician, for any

12   significant condition or illness?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Have you ever been hospitalized or

15   treated for any mental illness of any kind?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  Have you ever been treated for any

18   mental illness?

19          THE DEFENDANT:  No, sir, I have not.

20          THE COURT:  Have you ever been treated for

21   addiction to alcohol or narcotics?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Obviously, then, you have never been

24   hospitalized for any of that?

25          THE DEFENDANT:  No.

1          THE COURT:  Have you taken any medications of

2    any type within the last 24 to 48 hours?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Have you taken any alcohol or

5    narcotic substances within the last 24 or 48 hours?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Now, you, as I learned just a few

8    moments ago, have received a copy of the original indictment

9    and the superseding indictment.  Right?

10          THE DEFENDANT:  That is correct.

11          THE COURT:  And you have had the opportunity to

12    discuss the case in general, as well as the indictments,

13    with your lawyer, Mr. Medrano.  Is that correct?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Are you satisfied with the

16    representation Mr. Medrano has provided you to this point in

17    time?

18          THE DEFENDANT:  I am.

19          THE COURT:  I take it, then, that that

20    satisfaction, and your willingness to plead guilty, is at

21    least in part due to conversations that Mr. Burke and Mr.

22    Medrano have had.  Is that correct?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Mr. Burke has handed up to me a

25    memorandum of plea agreement, a document that is entitled

1    Memorandum of Plea Agreement.  It consists of four pages.

2    On the last page, as you know, there are four signature

3    lines, it appears you have signed in the appropriate place

4    designated by your name.  Is that correct, sir?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  That was today?

7                    THE DEFENDANT:  Yes, sir.

8                    MR. MEDRANO:  Yesterday, Your Honor.

9                    MR. BURKE:  Your Honor, I executed it today.

10                    THE COURT:  You signed it yesterday?

11                    THE DEFENDANT:  Yes, sir.

12                    THE COURT:  Did you read the document before you

13    signed it?

14                    THE DEFENDANT:  I did, sir.

15                    THE COURT:  Did you discuss it with Mr. Medrano

16    before you signed it?

17                    THE DEFENDANT:  Yes, sir.

18                    THE COURT:  When was the first time you and Mr.

19    Medrano had an opportunity to talk about that?

20                    THE DEFENDANT:  This specific one was yesterday.

21                    THE COURT:  Had you talked about a copy of this?

22                    THE DEFENDANT:  Prior to this, yes.

23                    THE COURT:  Did you satisfy yourself that this

24    is the same document that you saw before, at least a copy of

25    it?

1       THE DEFENDANT:  A copy of it, yes.

2       THE COURT:  Are you satisfied that you

3   understand the terms and conditions that compose the

4   paragraphs that comprise this document?

5       THE DEFENDANT:  Yes, sir.

6       THE COURT:  I will refer to these paragraphs

7   from time to time as terms and conditions, promises, that

8   type of language.  With your permission and the permission

9   of your lawyer and the government's lawyer, I am going to

10   forego the reading of this document or the summarization of

11   this document into the record but merely will simply make it

12   a physical part of the record.

13       Is that acceptable?

14       THE DEFENDANT:  Yes, Your Honor.

15       MR. MEDRANO:  Yes, sir.

16       MR. BURKE:  Yes, sir.

17       THE COURT:  I do want to highlight for you one

18   important aspect of this document.  That is this:  I am not

19   bound by any of the paragraphs, any of the terms and

20   conditions, any of the promises that you might have made to

21   the government or the government to you.  Do you understand

22   that?

23       THE DEFENDANT:  Yes.

24       THE COURT:  That means that should I reject any

25   one or more of these terms and conditions or promises, and

1    that rejection were to lead to a sentence that is more

2    severe than you or your lawyer or the government's lawyer,

3    the Probation Office, might have anticipated, you would

4    nonetheless be bound by your plea.  In other words, I would

5    not have to permit you to withdraw that plea.  Do you

6    understand?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  This memorandum of plea agreement

9    that you and the government's lawyer have signed, does this

10   contain the entirety of the agreement between you and the

11   government?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  In other words, there are no terms

14   and conditions, no promises outside of those set down in

15   this document.  Is that correct?

16             THE DEFENDANT:  None that I am aware.

17             THE COURT:  Doctor, has anyone attempted to

18   force you to plead guilty in this case in any way?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Are you doing so of your own free

21   will because you are indeed guilty of the offenses charged?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  The offenses that are outlined in

24   Counts One and Four, you need to understand, are felonies.

25   If I accept your guilty plea, you will be determined to be

1    guilty, adjudged guilty, found guilty of these felonies.

2    That finding, that judgment, that adjudication, will in all

3    likelihood deprive you of some valuable civil rights, such

4    as the right to hold public office, the right to serve on a

5    jury, the right to possession a firearm, the right to

6    possess any kind of destructive device, ammunition of any

7    kind, and, probably most importantly, the right to vote.  Do

8    you understand?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Let me again advise you what I am

11   sure you already know, that is the maximum penalties

12   provided by law.  That is not to say that these are the

13   penalties this Court will impose.

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Under Title, 18 U.S.C., Section

16   1344, you could be sentenced to a period of incarceration of

17   up to 30 years of imprisonment, five years of supervised

18   release, a fine of up to one million dollars, and I must

19   impose a special assessment of one hundred dollars for Count

20   Four.  Do you understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  The count that is the so called

23   international parental kidnapping count, on that charge you

24   could be sentenced up to three years, followed by one year

25   of supervised release, a fine of up to $250,000, and a

1    special assessment of $100.  Do you understand these things?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Let me say a word about supervised

4    release and what it is.  Should I sentence you to a term of

5    incarceration, you would in all likelihood be placed on a

6    period of some supervised release.  That would be the period

7    of release where you would remain under the supervision of

8    the Court and the U.S. Probation Office after any period of

9    imprisonment I might impose.  Were you to fail to comply

10   with any of the conditions set down governing your

11   supervised release period, you could be returned here for a

12   hearing to determine if there had been a violation and what

13   if anything I were going to do about it.  If I were to find

14   you guilty, you could be sentenced to further punishment, up

15   to and including returning you to prison.  Do you understand

16   that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Have you and Mr. Medrano had a

19   chance to talk about how federal sentencing works in general

20   terms?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you talked about how the U.S.

23   Sentencing Guidelines work, not in great detail but in

24   general terms?

25             THE DEFENDANT:  Yes.

1              THE COURT:  Then you understand, do you not,

2    that I, the U.S. Probation Office, counsel, we must all

3    attempt to calculate and must indeed calculate the Guideline

4    sentence in order to determine what advice the Guidelines

5    would have for me as to what the Guidelines suggest would be

6    an appropriate sentence.  Do you understand that?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you understand that I, in spite

9    of the fact we must gauge that calculation and make that

10   determination, I am not obliged, I do not have to follow the

11   Guideline advice?  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Do you understand that I could

14   sentence you within the Guideline range, above it or below

15   it?

16              Do you understand that?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  In other words, the Guidelines are a

19   factor that I must consider, among many other factors, in

20   determining an appropriate sentence.  Do you understand

21   this?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Do you understand that regardless of

24   the sentence, you and the government would in all likelihood

25   have the right to appeal from the sentence I impose?  Do you

1    understand that?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  There used to be something called

4    parole in the federal criminal justice system.  It no longer

5    exists.  Therefore, should I sentence you to a term of

6    incarceration, you would not be released on what used to be

7    known as parole.  Do you understand that?

8                THE DEFENDANT:  Yes, sir.

9                THE COURT:  Doctor, you walked into this

10   courtroom today in possession of the right to plead not

11   guilty, to persist in that not guilty plea, and to demand

12   your right to a trial, indeed, a trial by jury.  Do you

13   understand that?

14               THE DEFENDANT:  Yes.

15               THE COURT:  At trial you would be entitled to

16   the benefit of counsel, the right and benefit of counsel.

17   Mr. Medrano would have the right and ability to be there to

18   assist in your defense.  Do you understand that?

19               THE DEFENDANT:  Yes, sir.

20               THE COURT:  He would be able to bring a variety

21   of tools to bear in that area.  I will describe some of them

22   for you.  He could challenge the government's ability to

23   utilize certain evidence that it must present to support its

24   indictment.  You could file motions, legal motions, we call

25   them motions to suppress, motions in limine, these are just

1    names.  But these could ultimately result, if I so ruled, in

2    the deprivation of the agreement.  This evidence could be

3    visual, documentary, it could be testimonial.  And the

4    government would be put to the burden of producing

5    sufficient evidence to show that a crime had been committed.

6    Do you understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Should those motions be resolved

9    against you and for other reasons, the matter will proceed

10    forward.  Mr. Medrano would assist you in selecting the men

11    and women that would sit in judgment of you.  That is, the

12    picking of the jury.  Do you understand that?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  He would then have the ability to

15    challenge the testimony of the government that they gave on

16    what's called direct examination.  He would be able to

17    cross-examine those witnesses to challenge and test their

18    versions of the events.  Do you understand that?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  He could also assist, if you and he

21    were to determine it would prudent to do so, in you putting

22    on, making a presentation, putting on a defense during the

23    course of the trial.  Do you understand that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  He would have the right to do the

1    same thing the government would do, that is call witnesses

2    to the stand, introduce documentary evidence, other types of

3    evidence, indeed, you could be summoned to the stand to

4    testify.  Do you understand that?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  Having said that, I want you to

7    understand, and make sure you do, that you would not have an

8    obligation to put on a defense, that nobody could force you

9    to do that.  And that includes testifying on your own

10   behalf.  Do you understand that?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  And that is because it's the

13   government in a criminal prosecution that bears the burden

14   of proof.  Do you understand that?

15                   THE DEFENDANT:  Yes.

16                   THE COURT:  It would be the government that

17   would have to establish, if it could, beyond a reasonable

18   doubt that you committed the offenses with which you are

19   charged.  Do you understand that?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  This thing called proof beyond a

22   reasonable doubt is the highest standard of proof in our

23   justice system, civil or criminal.  Do you understand that?

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  Therefore, it is the most difficult

1    to overcome.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  In order to be convicted of the

4    offenses charged, the government would have to convince the

5    jury beyond a reasonable doubt that you committed the

6    charges the government has made against you.  Do you

7    understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Unless the government established

10   those facts beyond a reasonable doubt, you could not be

11   convicted.  Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  By offering this plea of guilty, if

14   the plea is accepted, you will have waived your right to a

15   trial and those rights associated with a trial as I have

16   described them.  Do you understand this?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  One other thing about the

19   government's burden of proof at trial.  Both these counts in

20   the indictment, superseding document, are cumulative, based

21   on statutes.  These statutes are composed of parts, what we

22   call elements.  The government would have to establish by

23   proof beyond a reasonable doubt that it had satisfied each

24   and every one of the elements of each offense charged?  Do

25   you understand that?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Let me share with you in brief what

3   they are:  (1) that you knowingly executed a scheme or

4   artifice to defraud a financial institution by means of

5   material false or fraudulent pretenses, representations or

6   promises, and secondly, that you did this with the attempt

7   to defraud, and finally, that the deposits of the financial

8   institution were at the time insured by the Federal Deposit

9   Insurance Corporation, otherwise known as the FDIC.  Do you

10   understand this?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  As to Count Four, the first element

13   is that you knowingly removed a child from the United States

14   or knowingly retained a child outside the U.S. who at some

15   point prior to his or her retention outside the United

16   States had been in the United States, and that you,

17   secondly, did this with the intent to obstruct the lawful

18   parental rights of another individual.

19        These are the elements of the offenses.  Do you

20   understand that?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Did you, in fact, commit the

23   offenses with which you are charged?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  I am going to ask that you and your

counsel sit down. I am going to ask that the government,

Mr. Burke, make a presentation. I am going to have a few

questions for you in a few moments.

Mr. Burke.

MR. BURKE: Your Honor, if this matter were to

proceed to trial, the government would have be prepared to

prove the following:

That in the summer of 2007, the defendant, Mr.

Matusiewicz, approached Wilmington Savings Funds Society,

known as WSFS, a banker there, inquiring about increasing

his home equity line of credit. The line of credit would be

collateralized by a home at 1424 Norbert Drive in

Middletown, Delaware. And further, in violation of the

superseding indictment, that the funds that the defendant

borrowed were insured by the Federal Deposit Insurance

Corporation.

And indeed, at this time Mr. Matusiewicz did

apply for a $249,000 line of credit from WSFS. The home was

to be collateralized by property which was a home that Dr.

Matusiewicz owned at the time of the indictment with a

person by the initials CM.

CM at the time lived elsewhere, not at that

property, as the two were divorced.

During the due diligence process for this loan,

home equity loan procedure, WSFS discovered that Mr.

1    Matusiewicz and his ex-wife were on the deed to the

2    property, and because WSFS Bank policy requires that both

3    parties on the deed to the property execute documents for a

4    home equity line of credit, the WSFS banker dealt with Mr.

5    Matusiewicz and informed him of that.  The bank had not been

6    in frequent contact with Mr. Matusiewicz before this

7    meeting, and he wasn't aware that Mr. Matusiewicz had been

8    married.

9              As a result, he called Mr. Matusiewicz on or

10   about August 14th of 2007, thinking he was still married to

11   CM, and told him that CM would be required to sign certain

12   documents regarding the loan as well as Mr. Matusiewicz.

13   Mr. Matusiewicz said that would be fine, and arranged to

14   meet with the banker the next day, August 15, 2007, in the

15   morning at Mr. Matusiewicz's optometry office to go over

16   those loan documents.

17             The banker briefed the defendant about the loan

18   closing documents, that they required both his signature and

19   that of CM's and CM's signature and initials.  Mr.

20   Matusiewicz then signed the documents himself.  And when the

21   banker asked about CM's whereabouts, Mr. Matusiewicz asked

22   where she was required to sign on the documents.  He then

23   left the room, and after a few moments returned with the

24   documents bearing the purported signature of CM and her

25   initials.  In fact, CM confirmed that she was not present in

1    Mr. Matusiewicz's offices on August 15, 2007 and in fact did

2    not see these documents.

3         Mr. Matusiewicz later had transferred the

4    approximately $249,000 that was the proceeds of this loan

5    from his own WSFS bank account to another account controlled

6    by his parents.  The money was then transferred overseas to

7    an account in a bank in New Zealand, which the government

8    has not been able to locate.

9         A few days after this, Your Honor, on

10   approximately August 26, 2007, the defendant's ex-wife

11   dropped off their three children in common to Mr.

12   Matusiewicz.  The children's initials as set forth in the

13   first superseding indictment are LM, LM and KM.  She dropped

14   them off at the home at Norbert Drive in Middletown,

15   Delaware.

16        Mr. Matusiewicz had arranged with his ex-wife

17   that he was to take the children on an approximately two-

18   week vacation to Disney World.

19        At the time there was a custody order in place

20   under the auspices of the Family Court of the State of

21   Delaware that Mr. and Mrs. Matusiewicz should have shared

22   custody of the three children.

23        Mr. Matusiewicz was then supposed to return the

24   children in early September 2007 after this trip to Disney

25   World.  He did not do so.

1              In reality, Mr. Matusiewicz, along with his

2       mother and the three daughters, left Delaware a few days

3       thereafter, and traveled out of the country.  They traveled

4       in a new motor home that had been purchased by Mr.

5       Matusiewicz's mother in July of 2007 for just over $80,000.

6       Mr. Matusiewicz, his mother, and the three girls, the three

7       children, traveled thereafter through various countries,

8       including Mexico, Panama, Costa Rico, and Nicaragua, over

9       the next year and a half, while an international search was

10      conducted for them by the New Castle County Police force and

11      various federal agencies.

12              Mr. Matusiewicz was ultimately found by federal

13      agents in March of 2009 living with his mother and his three

14      daughters in the motor home on a piece of property in

15      Nicaragua.  At the time he was arrested and returned to the

16      United States, where he was later detained on the instant

17      charges.  At the time of his arrest Mr. Matusiewicz had

18      various false forms of identification on his person or in

19      his possession for the motor home, including an address in

20      Hut River Province, located in Australia, with Mr.

21      Matusiewicz's picture and his mother's picture, as well as

22      false names for them, State of Florida photo ID cards with

23      his picture, pictures of his mother and children with false

24      names for each of them on the card, false Social Security

25      documents in the names of himself, his mother, and his

1     children, and various other false and fraudulent documents

2     that contained these false names.  Some of these documents

3     were the documents associated with Mr. Matusiewicz

4     indicating that they had been obtained many months before

5     Mr. Matusiewicz had fled with his children in or around

6     August of 2007.

7           Your Honor, those are the basic facts that the

8     government would present if this matter were to proceed to

9     trial.

10          MR. MEDRANO:  Your Honor, we do contest some of

11     the representations that were made by the government.

12     Specifically, concerning No. 1, the proceeds of the moneys

13     that Dr. Matusiewicz sustained from WSFS.

14          Let me represent to the Court without any

15     equivocation whatsoever, Your Honor, that those moneys were

16     returned to WSFS Bank.  All $249,000 that were the loan

17     proceeds of the documents that Dr. Matusiewicz went ahead

18     and signed on behalf of himself and his wife or her

19     signature have been returned to WSFS Bank.

20          In fact, because of the collateralization of the

21     house that the government went ahead and described, WSFS

22     Bank, Your Honor, by their own accounting is plus $30,000

23     even when you take into account all of the other loans that

24     Dr. Matusiewicz owed to WSFS Bank.

25          So as of today, if you were to go to WSFS Bank

1    and ask them, have you ceased your banking relationship with

2    Dr. Matusiewicz, they would say yes.  Do you owe them money,

3    are you plus or minus or moneys, they would say, the vice

4    presidents, they are plus $30,000.  That does not include,

5    Your Honor, approximately $30,000 that WSFS Bank charged off

6    as legal fees, for which we have not received an accounting,

7    and approximately another 20 to $30,000 in other expenses

8    they say they incurred in trying to get the property up to

9    speed to go ahead and sell.

10                   That is number one, Your Honor.

11                   Number two, concerning the issue of these

12   documents, the documents that the government alleges, those

13   documents were never used by Dr. Matusiewicz.

14                   THE COURT:  These are the passports and false

15   forms of identification?

16                   MR. MEDRANO:  That's correct, Your Honor.  Those

17   documents were never presented by Dr. Matusiewicz to any

18   entity or any governmental agency to try to pass himself off

19   as anybody else.  And the government has no proof of that as

20   well.

21                   THE COURT:  Mr. Burke made that representation,

22   that they had in fact been presented.

23                   MR. BURKE:  No, Your Honor.  Just that the

24   defendant possessed them.

25                   THE COURT:  I think that was the only

1    representation made.  Do you contest that?

2           MR. MEDRANO:  They were in his possession.  I

3    may have misunderstood.

4           Those are the two things that we dispute, Your

5    Honor.

6           THE COURT:  Mr. Burke, as to the items just

7    outlined, insofar as the return of the loan proceeds, the

8    $249,000 to WSFS and the additional expense, the

9    representation that WSFS is plus 30,000 --

10           MR. BURKE:  I can speak to that, Your Honor, and

11    I think the Court will hear more about it.  I think at a

12    minimum I will say, make no mistake, Mr. Matusiewicz did not

13    return that $249,000 to WSFS.  While Mr. Matusiewicz was in

14    flight, the government and the FBI worked diligently to try

15    to track the proceeds of this loan.  We then went to the

16    entity that was controlling the Bank of New Zealand bank

17    account, which the Court has heard a little about and will

18    hear more about at sentencing, and were convinced that the

19    person that ran that entity to give back to WSFS the

20    $249,000 in restitution, I think it is fair to say, it is

21    not clear how that person, whose name is Geoffrey Taylor,

22    got that money and sent it back.

23           What is clear and undisputed, at the time Mr.

24    Matusiewicz was in flight, that man had no idea this was

25    happening.

1              The Court will probably hear more about it.

2              THE COURT:  Let me offer this observation,

3    gentlemen.  I believe even absent agreement on these points

4    we are discussing, there is a factual basis for the plea.

5              MR. MEDRANO:  There is, Your Honor.

6              MR. BURKE:  Yes, Your Honor.

7              THE COURT:  My question to you, Doctor, other

8    than these items that we have just heard counsel and the

9    Court discuss, that is the return of the proceeds, the

10   $249,000, the representation that WSFS Bank is on the plus

11   side, as it's been referred to, an additional $30,000 above

12   the $249,000 line, and that WSFS incurred additional fees in

13   the form of legal fees and other costs, other than those

14   factual issues which are the subject of a contest, do you

15   agree with the representations made by Mr. Burke?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Those are the facts to which you are

18   pleading guilty?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Then my question to you, sir, is how

21   do you plead to Counts One and Four of the first superseding

22   indictment?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  The Court accepts the guilty plea

25   and finds in this case that Dr. Matusiewicz is fully

competent and capable of entering an informed plea, that he

is aware of the nature and the charges and the consequences

of the plea, the plea of guilty is a knowing and voluntary

plea, supported by an independent basis in fact, containing

each of the essential elements of the offense or offenses.

The plea is therefore accepted, and Dr. Thomas Matusiewicz

is therefore adjudged guilty of the offense.

I am going to have you sign with your lawyer the

back of the superseding indictment.

Now, Doctor, before there can be a sentencing

proceeding, something called a presentence investigation

must be conducted.  That will be conducted by a U.S.

Probation Officer and whatever other agencies they need to

assist them.

That investigation must result in a written

report.  You and your lawyer must be given copies of that

report, along with the government's attorney, so that you

can review it, and your lawyer on your behalf can make any

objections that you and he deem appropriate to any of the

reported facts, as well as to any discussions, suggestions,

recommendations that are made to me as to how the various

sentencing laws should apply, including the Sentencing

Guidelines.

Do you understand that?

THE DEFENDANT:  Yes, sir.

1              THE COURT:  You are going to be asked to

2      cooperate or assist in the preparation of this report by

3      submitting to an interview.  It will be scheduled at a time

4      that Mr. Medrano can attend.  Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  I am going to set Thursday, December

7      the 10th, let's move this to 10:00, that is the date and

8      time for sentencing.

9              Mr. Medrano, do you have your schedule?

10             MR. MEDRANO:  I do, Your Honor.  Unfortunately,

11     my calendar doesn't go out as far as December.  Your Honor,

12     obviously, I appreciate the Court's indulgence and my

13     ability to appear pro hac vice.

14             Judge, I would ask the Court, subject obviously

15     to the Probation Office completing their report, to set an

16     earlier sentencing date.  If I may go ahead and stand as to

17     my reasons.

18             THE COURT:  Sure.

19             MR. MEDRANO:  Dr. Matusiewicz has been in

20     custody.  He is coming up on six months.  Under my

21     calculations, under the most favorable conditions of the

22     Sentencing Guidelines -- I know they are not binding on the

23     Court -- taking into consideration some of the differences

24     in the arguments that we have to hash out concerning the

25     government's versions of the enhancements that apply or I

1    don't think apply, the Court could go ahead and at the time

2    of sentencing consider sentencing him to time served or as

3    much as 18 to 24 months.  That is basically the range.

4              He has already done six months straight.  I was

5    wondering if the Court could go ahead and grant my request

6    for an expedited report and sentencing so he could be

7    sentenced like in late October or November if at all

8    possible, because by that time he will have served eight

9    months, which is right in the middle of the Guideline range

10   which we anticipate will be applicable.

11             THE COURT:  It might be applicable.

12             MR. MEDRANO:  I understand, Your Honor.

13             THE COURT:  I am going to look over to my U.S.

14   Probation Officer for a minute.  I know that we are a bit

15   under the gun here.  I am not certain -- before I do that, I

16   would like to get the government's position.

17             MR. BURKE:  Your Honor, I wouldn't take a

18   position on the exact date.  I would note I think this is

19   one of those cases where the Probation Office is going to

20   take some time for them to get their hands around the case

21   and the facts of the case and the background.  I also expect

22   there will be a number of disputed issues.  I don't think

23   this is a case that lends itself to an extremely easy

24   resolution.  With that said, I certainly defer to the Court

25   with respect to the date.

1          THE COURT:  Excuse me a second.

2          (Court consults with Probation Officer

3   Matthews.)

4          THE COURT:  Mr. Medrano, getting directly to the

5   point, I am not going to be able to accommodate the request,

6   logistically, particularly given your representation on

7   behalf of Mr. Matusiewicz that there are going to be some

8   Guideline issues that are going to involve at least some

9   degree of complexity.

10         MR. MEDRANO:  That is true.

11         THE COURT:  It is not only the preparation of

12  this report.  This Judge is going to need some time to at

13  least become conversant with the issues.  You don't need to

14  hear my problems.  I am not in custody.  I am sensitive to

15  the reasons you have asked for this expedited treatment.

16  But under the circumstances, I don't think it wise.

17         I am going to leave the date at Thursday,

18  December the 10th.

19         MR. MEDRANO:  That is fine, Your Honor.  Thank

20  you, Your Honor.

21         THE COURT:  Is there anything that either

22  counsel feel that the Court has failed to cover in the

23  colloquy?

24         MR. MEDRANO:  May I have just a moment, Your

25  Honor, please?

1                 (Counsel consults with client.)

2                 MR. MEDRANO:  We have nothing else, Your Honor.

3   Thank you, sir.

4                 THE COURT:  We will recess.  Mr. Burke, can I

5   see you on another matter just for a moment.

6                 MR. MEDRANO:  Your Honor, I would like to

7   express my gratitude to the Court for allowing me to move

8   this hearing up.  You saved me from being chewed out by a

9   State District Court Judge in Texas.

10                THE COURT:  You are quite welcome.

11                (Hearing concluded at 9:30 a.m.)

12

13                      -  -  -

14   Reporter:  Kevin J. Maurer

15

16

17

18

19

20

21

22

23

24

25